Larry Wayne McKINLEY, Petitioner–Appellant,

v.

Fred SMITH, Commissioner, Alabama Department of Corrections, J.D. White, Warden, Kilby Correctional Center, Respondents–Appellees.

No. 85–7520.

United States Court of Appeals, Eleventh Circuit.

March 10, 1988.

Roger C. Appell, Birmingham, Ala., for petitioner-appellant.

Charles A. Graddick, Atty. Gen., Rivard Melson, Asst. Atty. Gen., Montgomery, Ala., for respondents-appellees.

Before TJOFLAT and ANDERSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.

TJOFLAT, Circuit Judge:

This habeas appeal involves a case of child abuse which resulted in death. Petitioner, Larry Wayne McKinley, was convicted of murder after the jury disbelieved his story that he had accidentally dropped his four-month-old stepdaughter onto a concrete floor. The sole question presented in this appeal is whether the state trial court denied petitioner due process of law when it refused to grant his request for funds to retain a pathologist to assist his attorney in interpreting the reports of the county medical examiner. The district court concluded that petitioner received due process and denied his application for a writ of habeas corpus. We affirm.

## I.

In the early morning of June 27, 1981, fireman were summoned to petitioner's room at the Holiday Inn Civic Center in downtown Birmingham, Alabama. Petitioner's four-month-old stepdaughter, Carrie Joann McKinley, was unconscious. Petitioner told the firemen that he had accidentally dropped Carrie onto the concrete floor of the walkway outside his

room. The firemen took her to a local hospital.

At the hospital, Carrie, still unconscious, was examined by Dr. Linda Norton, the Associate Chief Medical Examiner for Jefferson County, Alabama. Dr. Norton found that the child had been severely bruised around her eyes and cheeks. Carrie died a few days later. After the child's death, Dr. Norton performed an autopsy to determine the cause of death. At that time, she found additional bruises on the child's right arm, apparently made by a fist. Dr. Norton concluded that the child died from brain swelling resulting from a massive blow to her head. Dr. Norton issued an autopsy report containing these findings, as well as a report of her earlier examination made while the child was still alive.

On July 10, 1981, petitioner was indicted for murder by a Jefferson County, Alabama grand jury. The trial court declared petitioner indigent and appointed him counsel.

On December 11, petitioner moved the court, pursuant to Ala.Code § 15–12–21(d) (1982) (amended 1984),[1] for funds to employ four experts, only one of which is relevant here. Petitioner's motion stated:

Comes now the indigent defendant, Larry W. McKinley and moves this Honorable Court for an order allowing him to expend state funds in order to hire ... a pathologist. As grounds for said motion, the following is submitted.

. . . .

4. There are medical reports [i.e., Dr. Norton's reports,] concerning the death of the victim which are not within the knowledge of the undersigned counsel and it is necessary to obtain the services of a qualified pathologist or similarly trained expert to aid in the interpretation of said medical reports.[2]

The court heard petitioner's motion on January 29, 1982. At the hearing, petitioner's attorney merely restated his motion: he needed a pathologist to help him understand what Dr. Norton had written in her reports. The court summarily denied the motion. In doing so, however, it instructed the prosecutor to make Dr. Norton available to defense counsel to explain her reports. In addition, the court informed counsel that he was free to discuss the reports with Dr. Norton's superior, Dr. Brissie, the Jefferson County Medical Examiner, also a pathologist. The court implied in its ruling that if, after consulting with these pathologists, counsel still could not understand Dr. Norton's reports, the court would reconsider petitioner's request that the State provide funds for a pathologist. Petitioner's attorney never contacted either pathologist. Nor did he ever renew his request for funds.

Petitioner went to trial on February 8, 1982. Dr. Norton was the State's prime witness. She testified as to the nature of the child's injuries and the cause of death, as revealed in her autopsy and medical reports. She also rendered an opinion as to how the child sustained her fatal injuries. Contrary to petitioner's claim, Dr. Norton stated that the child did not die from a fall onto a concrete floor:

Barring the history of the child falling from three or four stories out of the

---

1. That statute provides:

Counsel appointed [pursuant to this statute] shall be entitled to receive for their services a fee to be approved by the trial court. The amount of such fee shall be based on the number of hours spent by the attorney in working on such case and shall be computed at the rate of $40.00 per hour for time expended in court and $20.00 per hour for time reasonably expended out of court in the preparation of such case. The total fees to any one attorney in any one case, from the time of appointment through the trial of the case, including motions for new trial, shall not, however, exceed $1,000.00. Counsel shall also be entitled to be reimbursed for any expenses reasonably incurred in such defense to be approved in advance by the trial court, but in no individual case shall such expenses exceed one-half of the allowable attorney fees provided in this section.

This statute has been interpreted as authorizing appointed counsel to hire an expert, with the approval of the trial court. See *Bailey v. State*, 421 So.2d 1364, 1367 (Ala.Crim.App.1982).

2. Petitioner's motion also requested funds to obtain the services of a hypnotist and a psychiatrist or psychologist.

window, and barring the history of a child being thrown from a moving motor vehicle and coming to rest outside the car, the only other instance where this type or this magnitude of damage occurs is when an adult individual or someone of adult statute [sic] takes a child, picks him up by the feet, the legs, waist and uses this child's head as the end of a whip with their own shoulders as the fulcrum and slams them down into either a hard surface or onto the floor, or slings them across the room.

Following the prosecutor's direct examination of Dr. Norton, petitioner's attorney requested the court to permit Dr. Carl Robinson, a Birmingham attorney and physician who was engaged in the general practice of medicine, to cross-examine Dr. Norton. The court denied the request. The reason for the court's denial was that Dr. Robinson was not an attorney of record for the defendant. Moreover, he had not been present during the voir dire of the jury; had Dr. Robinson been identified as defense co-counsel at the time the jury was empaneled, one or more of the present jurors might not have been selected. Accordingly, petitioner's attorney cross-examined Dr. Norton.[3]

The State rested its case following Dr. Norton's testimony. Petitioner then put on his defense, calling several witnesses, including himself. He called Dr. Norton to the stand first, and defense counsel examined her as if she were a hostile witness. He tried to get her to retract her opinion that the injuries could not have been caused by a fall, but he was unsuccessful.

Petitioner then took the stand and reiterated what he had told the firemen when they arrived at the Holiday Inn—that the child had fallen. The next witness was the coroner of Jefferson County, Jay Glass, a layman. Glass had seen the child after her death and testified that her bruises could have been caused by a fall. At the same time, however, he agreed with Dr. Norton's opinion that the cause of death, a swollen brain, could not have been produced by the fall petitioner described in his testimony.

Petitioner's final witness was Dr. Robinson. He had reviewed Dr. Norton's reports and a tape recording of her trial testimony. Dr. Robinson disagreed with Dr. Norton's opinion concerning the cause of the brain swelling, and stated that a fall probably caused the victim's head injuries, as petitioner had claimed.[4]

The jury rejected petitioner's explanation and found him guilty as charged. Petitioner moved the court for a new trial on the ground, among others, that the court had erred in not providing him funds for a pathologist to assist in his defense.[5] The court denied his motion and sentenced him to life imprisonment. Petitioner then appealed his conviction to the Alabama Court of Criminal Appeals. There he contended that the trial court had refused to provide funds for a pathologist because it erroneously believed that it lacked statutory authority to do so, and argued that the refusal had violated his rights to due process, equal protection, and effective assistance of counsel. The Court of Criminal Appeals affirmed his conviction:

been caused by routine medical procedures, performed in an attempt to save the child's life.

**3.** We note that petitioner's attorney did not request a continuance on the ground that he needed additional time to prepare for his cross-examination of Dr. Norton; nor did he renew his motion for provision of a pathologist. After reviewing the transcript of counsel's cross-examination of Dr. Norton, we agree with the observation of the Alabama Court of Criminal Appeals: even without his own expert, "defendant's counsel achieved extraordinary proficiency in defending his client ... and in the presentation of expert testimony by Dr. Robinson in an effort to counteract the testimony of Dr. Norton."

**4.** Dr. Robinson also testified that the bruises found on the victim's face and arm could have

**5.** In his motion for new trial, petitioner alleged:

The Defendant was denied an opportunity to present an adequate defense when he was denied the opportunity to hire his own independent expert witness to testify in his behalf. The Court further erred in allowing the District Attorney to argue in closing argument that the defense had not presented their own pathologist when in fact the prosecution knew that the Defendant did not have the funds to hire his own independent pathologist and that the Court had denied a request to hire an independent pathologist.

Whether such [an erroneous belief] was the trial court's reason for its denial of the motion, we do not know, but we are unwilling to assume that such was the reason. We think a good reason, viz., that the trial court probably determined that appellant's motion, as well as his position on the hearing of the motion, was so vague, indefinite and incomprehensible as to its objective that it could not with propriety have been granted....

....

Although the position taken by defendant's attorney on the hearing of the motion for funds for experts was commendably self-effacing and manifestly taken in a dedicated effort to do all that could be done for the client, it lacked specific objectivity as to anything that could have been within the power of the trial court to grant the defendant. Furthermore, it is to be observed that between the date of the hearing of the motion and the time of trial of the case, defendant's counsel achieved extraordinary proficiency in defending his client, in communicating with him and in the presentation of expert testimony by Dr. Robinson in an effort to counteract the testimony of Dr. Norton. We doubt not that the fact that Dr. Robinson was not a pathologist had a tendency to cause the jury to give less credence to Dr. Robinson's testimony than to Dr. Norton's testimony, but there is nothing to show that defendant would have been benefited by the testimony of a pathologist or by funds with which to employ a pathologist.

In an unpublished order, the Supreme Court of Alabama subsequently denied petitioner's application for a writ of certiorari.

Petitioner then applied to the district court for a writ of habeas corpus. He claimed that the trial court's denial of funds had denied him due process of law and also had rendered his counsel ineffective.[6] The district court, agreeing with the Alabama Court of Criminal Appeals that petitioner's motion for funds was vague and therefore inadequate under Alabama law, held that petitioner had not presented a constitutional question and denied relief. We vacated the district court's judgment and remanded the case for reconsideration in light of the Supreme Court's intervening decision in *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985). *McKinley v. Smith*, 760 F.2d 280 (11th Cir.1985).

On remand, the district court again denied relief. The court adhered to its initial holding that petitioner's claim failed to present a constitutional violation. As for *Ake*'s application to the case, the court concluded that the case was inapposite on its facts. Moreover, Dr. Robinson had served petitioner adequately, thus providing him all the process he was due. Petitioner now appeals.

## II.

As noted previously, the sole question presented by this appeal is whether the trial court denied petitioner due process when it refused to provide him funds to retain a pathologist. We conclude that no denial occurred.

## A.

In *Ake v. Oklahoma*, 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985), the Supreme Court stated that when an indigent defendant "demonstrates to the trial judge that his sanity at the time of the offense is to be a significant factor at trial, the State

---

**6.** In petitioner's memorandum brief to the district court, he stated:

In the present case, the Petitioner was not allowed to hire an expert to assist in developing his defense by helping his attorney in preparation of the cross examination of the State's expert nor with which to present any conflicting testimony of the State's expert. Petitioner at a minimum in a case such as this which depended mainly on the testimony of the State's expert was entitled to have his

attorney [given] the opportunity to consult with another expert witness concerning the accuracy of the State's opinion.

Petitioner also presented a second claim to the district court, contending that the trial court's failure to hold a preliminary hearing violated his rights to due process, equal protection, and effective assistance of counsel. The district court rejected this claim, and petitioner did not raise it on appeal.

must, at a minimum, assure the defendant access to a competent psychiatrist who will conduct an appropriate examination and assist in evaluation, preparation, and presentation of the defense." *Id.* at 83, 105 S.Ct. at 1097. The Supreme Court premised its statement on prior case law, noting that:

[m]eaningful access to justice has been the consistent theme of these cases. We recognized long ago that mere access to the courthouse doors does not by itself assure a proper functioning of the adversary process, and that a criminal trial is fundamentally unfair if the State proceeds against an indigent defendant without making certain that he has access to the raw materials integral to the building of an effective defense. Thus, while the Court has not held that a State must purchase for the indigent defendant all the assistance that his wealthier counterpart might buy, it has often reaffirmed that fundamental fairness entitles indigent defendants to "an adequate opportunity to present their claims fairly within the adversary system." To implement this principle, we have focused on identifying the "basic tools of an adequate defense or appeal," and we have required that such tools be provided to those defendants who cannot afford to pay for them.

*Id.* at 77, 105 S.Ct. at 1094 (citations omitted).

Petitioner argues that *Ake*'s rationale is not limited to the appointment of psychiatrists and should be applied to all experts, including pathologists. He contends that once an indigent defendant makes a showing that expert assistance *of any kind* is necessary for the preparation of his defense, the state must make provision for the assistance. In support of his position, petitioner cites a footnote from the Supreme Court's recent opinion in *Caldwell v. Mississippi*, 472 U.S. 320, 324 n. 1, 105 S.Ct. 2633, 2637 n. 1, 86 L.Ed.2d 231 (1985), a case in which the defendant sought the provision of nonpsychiatric expert assistance.[7] We will assume, for sake of argument, that petitioner's contention is correct and that the due process clause may require a state to furnish an indigent defendant nonpsychiatric expert assistance upon an adequate showing of need.

To establish a due process violation under *Ake*, the defendant must show that "he made a timely request to the trial court for the provision of expert assistance, the court improperly denied the request, and the denial rendered the defendant's trial fundamentally unfair." *Moore v. Kemp*, 809 F.2d 702, 710 (11th Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 2192, 95 L.Ed.2d 847 (1987). In deciding whether a denial of due process has occurred,

we must assess the reasonableness of the trial judge's action at the time he took it. This assessment necessarily turns on the sufficiency of the petitioner's explanation as to why he needed an expert. That is, having heard petitioner's explanation, should the trial judge have concluded that unless he granted his request petitioner would likely be de-

---

7. That footnote reads as follows:

Petitioner also raises a challenge to his conviction, arguing that there was constitutional infirmity in the trial court's refusal to appoint various experts and investigators to assist him. Mississippi law provides a mechanism for state appointment of expert assistance, and in this case the State did provide expert psychiatric assistance to Caldwell at state expense. But petitioner also requested appointment of a criminal investigator, a fingerprint expert, and a ballistics expert, and those requests were denied. The State Supreme Court affirmed the denials because the requests were accompanied by no showing as to their reasonableness. For example, the defendant's request for a ballistics expert included little more than "the general statement that the requested expert 'would be of great necessarius witness.'" 443 So.2d 806, 812 (1983). Given that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision. Cf. *Ake v. Oklahoma,* 470 U.S. 68, 82–83 [, 105 S.Ct. 1087, 1095–1096, 84 L.Ed.2d 53] (1985) (discussing showing that would entitle defendant to psychiatric assistance as matter of federal constitutional law). We therefore have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought. *Caldwell,* 472 U.S. at 323–24 n. 1, 105 S.Ct. at 2637 n. 1.

nied an adequate opportunity fairly to confront the State's case and to present his defense?

*Id.; see also Messer v. Kemp,* 831 F.2d 946, 960 (11th Cir.1987) (en banc).

In the case at hand, petitioner made his request for the assistance of a pathologist, and the court denied it, ten days prior to the scheduled commencement of his trial. He made no subsequent requests. Accordingly, in assessing petitioner's claim, we focus on the scope of petitioner's request and the information made available to the trial judge when he denied petitioner's motion for funds.

### B.

The trial judge of course knew that petitioner had been indicted for killing his stepdaughter. Although the record is not clear on the point, we will assume the judge knew that the State was contending that the death resulted from child abuse, and that petitioner would seek to avoid conviction by explaining that he had accidentally dropped the child onto a concrete floor. In addition, the judge probably knew that Dr. Norton would be the State's principal witness and that her testimony would be based on the autopsy and medical reports that she had prepared.

Petitioner's attorney, in his motion to the court, represented that he needed funds to procure "a qualified pathologist or similarly trained expert to aid in the interpretation of" Dr. Norton's autopsy and medical reports. At the hearing on the motion, the following transpired:

[PETITIONER'S COUNSEL]: I have been presented with certain documents, pathology reports and things from the Coroner's Office. This is not within my expertise. This information is facts and figures that are not within my expertise and I need the services of a trained pathologist or someone similarly qualified to explain to me exactly what the documents say and what they mean.

[A pathologist is] necessary in order to develop a proper defense in this case. Without the funds from the State of Ala-

bama to hire [one] ... I cannot give my client a proper defense....

That's all I have for now.

....

[PROSECUTOR]: [W]e would object to the motion for funds for the employment of a ... pathologist. I think the fact that [petitioner's counsel] has not been to see Doctor Norton nor listened to the taped statement given by his client, if he did that, it might assist him. And I don't think there is any evidence that Doctor Norton would refuse to talk to him and explain to him any terms. And further, there is no Statute providing for the employment of a pathologist ... in this case.

[PETITIONER'S COUNSEL]: Judge, all I have to say on this is that the State of Alabama has the funds and the opportunity to hire ... pathologists ... all spent out of State funds. Certainly Doctor Norton is employed by the State and is going to most likely testify in this case. I should have the opportunity to get an independent evaluation of the facts and circumstances so that I can properly evaluate the pathologist's report. Obviously she is going to be—it's her report. I need somebody to look over her report and see if it's correct or incorrect. Certainly I would assume that anybody would say that that report is one hundred percent correct.... I think the State of Alabama does have a Statute that says—allowing indigents certain funds to prepare a defense. And on a proper motion by defense attorney and showing a need, which I think we have done, I don't think the State has argued that I haven't shown a need, we are entitled to expend certain funds for the defense of this case. Without these funds, without this help I cannot present a proper defense for my client.

THE COURT: Anything further?

[PROSECUTOR]: Nothing.

THE COURT: The Court overrules the motion for funds. However, I'm instructing the District Attorney to contact Doctor Norton and Doctor Brissie to explain the report to [petitioner's counsel], whatever facts he does not understand.

[PETITIONER'S COUNSEL]: We except to that ruling.

The trial judge's response to petitioner's request for funds appears to us to have been reasonable. The judge made Dr. Norton and Dr. Brissie available to explain Dr. Norton's autopsy and medical reports; conferring with them would have been the logical starting point for counsel's preparation of petitioner's defense.

It is obvious to us, from the above dialogue, that the judge denied petitioner's request for funds without prejudice to petitioner's right to renew his motion after his attorney consulted the two pathologists. Petitioner's attorney never contacted either of them, however. Had he done so and reported to the court that he still needed the assistance of a pathologist, and had the court again denied his request for funds to employ one, we would have a far different case.

Petitioner asks us, however, not to focus on his need to have someone explain Dr. Norton's reports to him, but to read his request for funds as a blanket request for the provision of a pathologist. The defendant in *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985), made a similar request. In *Caldwell*, the defendant, an indigent, was on trial for murder. He sought the provision of several experts, including a criminal investigator and a ballistics expert.[8] His request was denied, and at trial he was convicted of murder. The Mississippi Supreme Court affirmed the conviction. Addressing his claim that the trial judge's refusal to provide the requested experts had rendered his trial fundamentally unfair, the court observed that the defendant had failed to allege specific facts supporting the costs, terms, and purposes of the experts and had simply stated that the experts "would be of great necessarius witness." *Caldwell v. State*, 443 So.2d 806, 812 (Miss.1983). On

certiorari, the Supreme Court, citing *Ake*, agreed, stating:

> Given that petitioner offered little more than undeveloped assertions that the requested assistance would be beneficial, we find no deprivation of due process in the trial judge's decision. We therefore have no need to determine as a matter of federal constitutional law what if any showing would have entitled a defendant to assistance of the type here sought.

*Caldwell*, 472 U.S. at 323–24 n. 1, 105 S.Ct. at 2637 n. 1 (citation omitted). We believe that *Caldwell* forecloses petitioner's argument that his blanket request for a pathologist was sufficient. The only reason petitioner gave the trial judge in support of his request was that his counsel needed help in understanding Dr. Norton's report. In response, the judge ordered that Dr. Norton and Dr. Brissie be made available to petitioner's counsel to explain the report. Under the circumstances, we hold that the judge's order was reasonable and that petitioner was not denied due process of law.[9]

AFFIRMED.

---

8. The defendant in *Caldwell* also moved the court for, and was granted, a state-appointed psychiatric expert. *Caldwell v. State*, 443 So.2d 806, 812 (Miss.1983), *rev'd*, *Caldwell v. Mississippi*, 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985).

9. In light of our disposition, we do not decide whether petitioner would have been entitled to a pathologist to assist in his defense and to testify in his behalf, had he made a proper request and an adequate showing of need.